**In re 2011 REDISTRICTING CASES.**

**No. S–14441.**

Supreme Court of Alaska.

March 14, 2012.

Before: CARPENETI, Chief Justice, Matthews, Senior Justice, Fabe, Winfree, and Stowers, Justices.

### Order

**IT IS ORDERED:**

1. Both petitions for review of the superior court's orders regarding the Redistricting Board's Proclamation Plan of June 13, 2011, are **GRANTED.**[1]

2. This case is **REMANDED** to the superior court with instructions to further remand to the Board to formulate a plan in accordance with this order.

3. At the outset, we commend the Board for its diligence and dedication throughout the redistricting process. The record demonstrates that the Board endeavored to weigh competing constitutional and statutory provisions, considered a great deal of input from Alaska's citizens, and sought to create a plan that would accommodate both the Alaska Constitution and the federal Voting Rights Act. The redistricting process in Alaska is difficult, and, in this case, the Board made conscientious efforts in discharging its duties.[2]

---

**1.** One petition for review was filed by George Riley and Ron Dearborn (Riley), plaintiffs in the superior court. The Alaska Redistricting Board, the defendant in the superior court, filed a separate petition for review.

**2.** The Redistricting Board is an independent entity created under article VI, section 8 of the Alaska Constitution. It consists of five members, two appointed by the Governor, one appointed by the presiding officer of the Senate, one appointed by the presiding officer of the House of

4. We also commend the superior court, the Honorable Michael McConahy presiding, for its expedited processing of the challenges to the Board's Proclamation Plan. After extensive motion practice the court held a trial beginning on January 9, 2012 and concluding on January 17, 2012. Following trial the court issued a 136–page Memorandum Decision and Order that is impressively thoughtful and thorough.

5. In *Hickel v. Southeast Conference*, we considered a Proclamation Plan that, like the Plan in this case, "accorded minority voting strength priority above other factors, including the requirements of article VI, section 6 of the Alaska Constitution." [3] We cautioned that while compliance with the Voting Rights Act takes precedence over compliance with the Alaska Constitution, "[t]he Voting Rights Act need not be elevated in stature so that the requirements of the Alaska Constitution are unnecessarily compromised." [4] We then described the process the Board must follow to ensure that our constitutional redistricting principles are adhered to as closely as possible. After receiving the decennial census data, "[t]he Board must first design a reapportionment plan based on the requirements of the Alaska Constitution. That plan then must be tested against the Voting Rights Act. A reapportionment plan may minimize article VI, section 6 requirements when minimization is the only means available to satisfy Voting Rights Act requirements." [5]

■ 6. It is undisputed that the Board began redistricting in March and April of 2011 by focusing on complying with the Voting Rights Act, thereby ignoring the process we mandated in *Hickel*. This focus resulted in the creation of five effective Native house districts, one "influence" house district, and three effective Native senate districts. The superior court found that two of these house districts violated the Alaska Constitution and were not necessary to achieve Voting Rights Act compliance. In his petition, Riley alleges other constitutional defects, including one related to the Board's use of excess population from the Fairbanks North Star Borough to complete one of these Native districts. And the superior court expressed unease with the "influence" district created in the southeast and invited us to consider its validity sua sponte.

7. Because it did not follow the *Hickel* process, the Board cannot meaningfully demonstrate that the Proclamation Plan's Alaska constitutional deficiencies were necessitated by Voting Rights Act compliance, nor can we reliably decide that question. The *Hickel* process provides the Board with defined procedural steps that, when followed, ensure redistricting satisfies federal law without doing unnecessary violence to the Alaska Constitution. The Board must first design a plan focusing on compliance with the article VI, section 6 requirements of contiguity, compactness, and relative socioeconomic integration; it may consider local government boundaries and should use drainage and other geographic features in describing boundaries wherever possible. Once such a plan is drawn, the Board must determine whether it complies with the Voting Rights Act and, to the extent it is noncompliant, make revisions that deviate from the Alaska Constitution

Representatives, and one appointed by the Chief Justice of the Supreme Court.

Under article VI, section 10 of the Alaska Constitution, the Board is required to adopt one or more proposed redistricting plans within 30 days after the official reporting of the decennial census. The Board is required to hold public hearings on the proposed plan and no later than 90 days after the reporting of the decennial census the Board must adopt a final plan and issue a Proclamation of Redistricting.

Under article VI, section 11 any qualified voter may apply to the superior court to correct any error in redistricting within 30 days following the adoption of the final redistricting plan. On appeal from the superior court this court is to review the cause "on the law and the facts." Under section 11, all dispositions by the superior court and this court should be expedited and shall have priority over all other matters. Section 11 also provides that "upon a final judicial decision that a plan is invalid, the matter shall be returned to the Board for correction and development of a new plan. If that plan is declared invalid, the matter may be referred again to the Board."

**3.** 846 P.2d 38, 51 n. 22 (Alaska 1992).

**4.** *Id.*

**5.** *Id.*

when deviation is "the only means available to satisfy Voting Rights Act requirements."[6]

8. The *Hickel* process assures compliance with the Alaska Constitution's requirements concerning redistricting to the greatest extent possible. The *Hickel* process also diminishes the potential for partisan gerrymandering and promotes trust in government. We have previously noted that the article VI, section 6 requirements were designed to prevent gerrymandering by ensuring "that the election district boundaries fall along natural or logical lines rather than political or other lines."[7] A redistricting plan that substantially deviates from these constitutional requirements undermines trust in the process.

9. Cases decided by the United States Supreme Court subsequent to *Hickel* have made adherence to the *Hickel* process even more critical. In a series of cases, the Supreme Court has established that under the Voting Rights Act, a jurisdiction cannot unnecessarily depart from traditional redistricting principles[8] to draw districts using race as "the predominant, overriding factor."[9] Following the *Hickel* process will facilitate compliance with federal constitutional law by ensuring that traditional redistricting principles are not "subordinated to race."[10]

10. We recognize that the Board is faced with a difficult task in attempting to harmonize the requirements of the Alaska Constitution and the Voting Rights Act. We have previously characterized the redistricting process in Alaska as "a task of 'Herculean proportions,'"[11] and we do not diminish the considerable efforts made by the Board in this case. But these difficulties do not limit the Board's responsibility to create a constitutionally compliant redistricting plan, nor do they "absolve this court of its duty to independently measure each district against constitutional standards."[12] Moreover, advances in computer software appear to have streamlined the redistricting process and reduced the burden felt by the Board in past cycles.[13] The *Hickel* process is designed to "ensure that the requirements of article VI, section 6 of the Alaska Constitution are not unnecessarily compromised by the Voting Rights Act"[14]; it may not be disregarded for reasons of expediency when drafting a permanent plan.

11. On remand, the Board must follow the *Hickel* process. If deviation from the Alaska Constitution is the only means available to satisfy the Voting Rights Act's requirements, the Board must endeavor to adopt a redistricting plan that includes the least deviation reasonably necessary to satisfy the Act, thereby preserving the mandates of the Alaska Constitution to the greatest extent possible.[15]

12. Because the new plan eventually formulated by the Board may moot the claims raised in this case, we decline to decide them at this time with the exceptions set out in the following paragraphs. If the Board is unable

6. *Id.*

7. *Id.* at 45.

8. *Bush v. Vera*, 517 U.S. 952, 959–60, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996).

9. *Miller v. Johnson*, 515 U.S. 900, 920, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995).

10. *Bush*, 517 U.S. at 959, 116 S.Ct. 1941 (internal citation and quotation marks omitted).

11. *In re 2001 Redistricting Cases*, 44 P.3d 141, 147 (Alaska 2002) (quoting *Egan v. Hammond*, 502 P.2d 856, 865–66 (Alaska 1972)).

12. *Id.*

13. *See Holt v. 2011 Legislative Reapportionment Comm'n*, —— Pa. ——, —— A.3d —— (2012) (Pa.

2012) ("[T]he development of computer technology appears to have substantially allayed the initial, extraordinary difficulties in achieving acceptable levels of population deviation without doing unnecessary violence to other constitutional commands.").

14. *Hickel v. Se. Conference*, 846 P.2d 38, 51 n. 22 (Alaska 1992).

15. In order to expedite further judicial review we recommend that the Board make findings, in furtherance of the *Hickel* process, that the initially designed plan complies with the requirements of the Alaska Constitution, that it either does or does not comply with the Voting Rights Act and, if the latter, that the new Proclamation Plan ultimately adopted by the Board deviates from the requirements of the Alaska Constitution to the least degree reasonably necessary to ensure compliance with the Voting Rights Act.

to draft a plan that complies with this order in time for the 2012 elections, it may petition this court for an order that the 2012 elections be conducted using the Proclamation Plan as an interim plan.[16] But legislative districts for subsequent elections will be defined by the plan ultimately arrived at by the Board after following the *Hickel* process.

13. We address one legal question raised by Riley: whether the superior court erred in ruling that "the anti-dilution rule cannot be violated if the City [of Fairbanks] cannot support a senate district based on its population." It is undisputed that the population of the City of Fairbanks makes up 89 percent of an ideal senate district. That fact does not preclude Riley's voter dilution claim. Indeed, in *Kenai Peninsula Borough v. State*, we allowed a group of Anchorage voters making up only 51 percent of an ideal senate district to bring a similar voter dilution claim, indicating that ".51 senate seat underrepresentation ... tends toward disproportionality." [17] The superior court's legal ruling was therefore error, and, based on this incorrect premise, the superior court did not proceed to evaluate the merits of Riley's voter dilution claim. Depending on how the districts are redrawn on remand, this issue may or may not recur. But if it does, and a similar challenge is raised, the superior court will need to make findings on the elements of a voter dilution claim, including whether a politically salient class of voters existed and whether the Board intentionally discriminated against that class.[18]

14. We also address one legal question raised by the Board: whether the superior court erred in ruling that House Districts 37 and 38 did not comply with the Alaska Constitution based on the rationale that "all five of the [Native] effective House Districts have more Native VAP [voting age population] than necessary." Given the under-population of the five Native effective house districts, this particular rationale does not justify concluding that Districts 37 and

38 were not necessary under the Voting Rights Act because, as the superior court elsewhere concluded, "[i]t was not a matter of whether excess population needed to be added to rural Native districts but only a matter of where to access this excess urban population...."

Entered by direction of the court.

---

16. In such case we would expect the Board to have modified the Proclamation Plan with respect to House Districts 1 and 2 as ordered by the superior court because those modifications are not contested.

17. 743 P.2d 1352, 1373 (Alaska 1987).

18. *See In re 2001 Redistricting Cases,* 44 P.3d 141, 144 (Alaska 2002).