### In re 2011 REDISTRICTING CASES.

### No. S–14721.

### Supreme Court of Alaska.

### June 19, 2012.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices, and MATTHEWS, Senior Justice.*

* Sitting by assignment under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

1. The order is attached as Appendix 1 after Justice Stowers's dissent.

2. *In re 2011 Redistricting Cases,* 274 P.3d 466, 467 (Alaska 2012) (citing *Hickel v. Se. Conference,*

**Corrected Order Dissenting Opinions To May 22, 2012 Order**

WINFREE and STOWERS, Justices, dissented to the May 22, 2010 order; their dissenting opinions are attached. As referenced in the Order, they would require that the 2012 elections be conducted under the reconfigured districts submitted by the Board on May 15, 2012.

Entered by direction of the court.

WINFREE, Justice, with whom STOWERS, Justice, joins, dissenting.

I respectfully disagree with the court's May 22, 2012 order directing use of the April 5, 2012 Amended Proclamation Plan as the redistricting plan for the 2012 election.[1] It is now beyond doubt that the April 5 plan violates the Alaska Constitution, at least with respect to Southeast Alaska. The Board recently constructed five different *"Hickel* plan" options for Southeast Alaska that are more compact and contiguous than the Southeast districts under the April 5 plan, and the difference cannot be explained by socioeconomic integration. This demonstrates that despite its previous arguments to the contrary, the Board did not first design the April 5 plan based solely on the requirements of the Alaska Constitution.[2]

It appears the Board followed our May 10, 2012 remand directive to construct Southeast Alaska voting districts in compliance with the Alaska Constitution,[3] and the reformulated districts under the May 15 plan for Southeast Alaska appear, at least facially, to comply with constitutional requirements. I recognize that interested parties have not had a full and fair opportunity to appear before the Board and propose alternate plans, or raise their socioeconomic-integration objections to the May 15 reformulated plan. But if the 2012 election options are either the April 5 Amended Proclamation Plan or the May 15

846 P.2d 38, 51 n. 22 (Alaska 1992)) ("The Board must first design a plan focusing on compliance with the article IV, section 6 requirements of contiguity, compactness, and relative socioeconomic integration....").

3. The order is attached as Appendix 2 after Justice Stowers's dissent.

reformulated plan,[4] the former violates the Alaska Constitution and the latter may not. I therefore conclude that the May 15 reformulated plan should be the 2012 interim plan.

The court instead chose the April 5 Amended Proclamation Plan because of a newfound concern about application of the federal Voting Rights Act (VRA) to Southeast Alaska. In our May 10 order, we instructed the Board that the reformulated Southeast Alaska districts "should not be altered based on the [VRA] because there is no VRA justification for deviating from Alaska constitutional requirements in Southeast Alaska."[5] Why did we do that? Because the record before us indicated that the United States Department of Justice (DOJ) no longer considers "influence districts" when measuring retrogression but limits its consideration to "effective districts." This evidence came from the Board itself.

Dr. Lisa Handley, the Board's VRA expert, testified before the superior court that DOJ had changed the benchmark against which redistricting plans are evaluated for retrogression. Dr. Handley explained that a minority district is now evaluated solely to determine whether the district "had an ability to elect or did not have an ability to elect." Dr. Handley defined the term "ability to elect" as "[w]hether [a district] usually elected the minority-preferred candidate or whether it usually did not." Dr. Handley further testified that if a district did not have an ability to elect over the past ten years, "it's not a protected district and . . . there is not an obligation on the part of the jurisdiction to create an effective minority district to represent that district." Dr. Handley then testified that the prior influence district in Southeast Alaska "did not consistently elect the [Native] candidate of choice" in past election cycles and therefore was not effective. She also testified to being informed by a DOJ analyst that, under this new standard,

Alaska's benchmark is five effective Native house districts and three effective Native senate districts. The conclusion that follows from this testimony is that DOJ would not reject as retrogressive a plan that failed to include an influence district in Southeast Alaska, because the former influence district in that region did not function as an effective district.

As we noted in our March 14 order, a constitutional redistricting plan "satisfies federal law without doing unnecessary violence to the Alaska Constitution."[6] If, as the Board's VRA expert testified, there is no VRA justification for manipulating the Southeast districts to achieve certain percentages of Native Alaskan voting age population, then the *Hickel* process demands that those districts be drawn solely with reference to the requirements of the Alaska Constitution. Our May 10 order therefore required the Board to redesign the Southeast Alaska districts without reference to the VRA.

Sealaska Corporation argued we erred by concluding "there is no VRA justification for deviating from Alaska constitutional requirements in Southeast Alaska."[7] It contended that "regardless of the continued legal significance of Native influence districts, the [VRA] prohibits retrogression of minority voting rights." Sealaska argued that "replacing a Native influence district currently comprised of 36.6 percent Natives with a rump district with only a 26.6 percent Native population" and "parceling the remaining Native Alaskan voters among urban districts where their influence will be heavily diluted[ ] is precisely the kind of retrogression that the [VRA] prohibits." But nothing in the record suggests this is the standard DOJ currently uses to evaluate whether a redistricting plan is retrogressive, and Sealaska submitted nothing to us but argument to support its position.

---

4. It seems beyond doubt that because of population changes throughout Alaska, the existing districting violates the fundamental constitutional mandate for equal voting districts, and therefore should not be used as an interim plan for the 2012 election.

5. Alaska Supreme Court Order, at 2 (May 10, 2012).

6. *In re 2011 Redistricting*, 274 P.3d at 467.

7. Alaska Supreme Court Order, at 2 (May 10, 2012).

The court evidently was swayed by Sealaska's argument, concluding there is a risk DOJ may not preclear the May 15 reformulated plan and the 2012 election would be disrupted. But the court neither explained how that risk changed since our May 10 remand order nor identified any evidence supporting a reassessment of that risk. Nor did the court explain why Sealaska's arguments about Southeast Alaska carry more weight than other parties' VRA challenges to districts in other areas of the state under the April 5 Amended Proclamation Plan.

I recognize the always-present risk that DOJ will not preclear an Alaska redistricting plan. Indeed, there is some risk that DOJ will not preclear the April 5 Amended Proclamation Plan. But the court's sudden deference to a speculative risk assessment about the May 15 reformulated plan flies in the face of our rule that the Alaska Constitution is the starting point for redistricting and deviations to accommodate the VRA must be as limited as possible.[8] In my view the Alaska Constitution comes first, and the record before us strongly suggests that the May 15 reformulated plan for Southeast Alaska complies with the Alaska Constitution and that deviations to accommodate the VRA are unnecessary.

I would therefore implement the May 15 reformulated plan as the interim plan for the 2012 election. If the Board's VRA expert is incorrect and if DOJ denied preclearance because it required an influence district in Southeast Alaska to avoid retrogression, then the Board, this court, and the Division of Elections would have a lot of work to do in a short amount of time to ensure that the 2012 election goes forward. This seems a small price to pay to honor the Alaska Constitution.

**STOWERS, Justice, with whom WINFREE, Justice, joins, dissenting.**

I respectfully dissent from the court's decision of May 22, 2012, which orders that the Alaska Redistricting Board's unconstitutional April 5, 2012 Amended Proclamation Plan shall be used as the interim redistricting plan for the 2012 elections. I also join Justice Winfree's dissent from this decision. I write separately to provide a more complete overview of the court's previous redistricting opinions and orders in this case. The court's own prior orders in this 2011 redistricting case demonstrate that the May 22, 2012 order fails to uphold the Alaska Constitution.

The court's May 22 order *reverses* our May 10, 2012 Order Regarding Interim Plan for 2012 Elections, in which we *unanimously* ordered that "the Board's Amended Proclamation Plan be adopted as an interim plan to govern the 2012 elections, except" that we remanded the amended plan to the Board to reformulate the districts in Southeast Alaska for the specific purpose of "focusing on *compliance with [Alaska Constitution's] article VI, section 6 requirements* of contiguity, compactness, and relative socioeconomic integration...."[1] We also unanimously ordered that "[t]he reformulated plan should *not* be altered based on the Voting Rights Act (VRA)[2] because there is *no* VRA justification for deviating from Alaska constitutional requirements in Southeast Alaska."[3] The Board promptly met again and produced an amended plan that, in response to our May 10 order, reformulated the Southeast districts to comply with the Alaska Constitution without VRA deviations.

In its May 22 order, the court explained why it was retreating from our earlier, unanimous decision: "because of the numerous objections to the reconfigured districts that

---

**8.** *In re 2011 Redistricting*, 274 P.3d at 467–68 (quoting *Hickel*, 846 P.2d at 51 n. 22) ("The Board must first design a plan focusing on compliance with the article VI, section 6 requirements of contiguity, compactness, and relative socioeconomic integration" and may only "make revisions that deviate from the Alaska Constitution when deviation is 'the only means available to satisfy Voting Rights Act requirements.'").

**1.** Alaska Supreme Court Order, at 1 (May 10, 2012) (emphasis added) (attached as Appendix 2).

**2.** 42 U.S.C. § 1973c (2006) (codifying Section 5 of the Amended Voting Rights Act, Pub.L. No. 109–246, § 5, 120 Stat. 580 (2006)).

**3.** Alaska Supreme Court Order, at 2 (May 10, 2012) (emphasis added).

the court has received." [4] But the court did not conclude that the reconfigured districts did not comply either with the court's May 10 order or the Alaska Constitution; to the contrary the court said:

> While the reconfigured districts may comply with the redistricting criteria of article VI, section 6 of the Alaska Constitution, there is a risk that the United States Department of Justice would decline to pre-clear them under the Voting Rights Act.... [T]o avoid this possibility, the court will not require the use of the May 15, 2012 reconfigured districts for the 2012 elections.[5]

I am puzzled by the court's reasoning. A central issue, perhaps *the* central issue, throughout the 2011 redistricting case both in the superior court and the supreme court has concerned the tension between complying strictly with the Alaska Constitution (which prohibits discrimination based on race, even when discrimination may promote a minority's ability to maintain its historical, numerical level of representation in the Alaska Legislature[6]) and the contrary requirement of the federal Voting Rights Act (which mandates that in states subject to VRA oversight, a minority's historical, numerical level

of representation in the legislature may not be diminished by a redistricting plan because this could be considered illegally retrogressive under federal law[7]). I think it is fair to say that everyone involved in the 2011 redistricting case—the Board, the parties, the amicus participants, the superior court, and certainly the supreme court—understands that if the State's redistricting plan decreases Native voting power in what are called "effective" Native districts (that is, districts in which Native voters were able to elect a representative of their choice in the previous "benchmark" election), this may constitute a violation of the VRA and the Department of Justice (DOJ) would not approve ("pre-clear") the redistricting plan. But as Justice Winfree cogently explains, the Board's VRA expert, Dr. Lisa Handley (who has also advised DOJ in other VRA redistricting cases), testified that the Native district in Southeast Alaska was *not* historically an effective district; rather, it was considered an "influence" district, meaning that Native voters were not able to consistently elect the representative of their choice, but had sufficient voting power to influence elections.[8] Dr. Handley further explained that based on her discussions with DOJ, the Department would evaluate

---

4. Alaska Supreme Court Order, at 1 (May 22, 2012) (attached as Appendix 1).

5. *Id.* at 1–2. The court's full explanation states:

> While the reconfigured districts may comply with the redistricting criteria of article VI, section 6 of the Alaska Constitution, there is a risk that the United States Department of Justice would decline to pre-clear them under the Voting Rights Act. Notice of the failure of the Department of Justice to pre-clear the new districts would come so late in the 2012 election cycle that a great disruption to the election process would result. In order to avoid this possibility, the court will not require the use of the May 15, 2012 reconfigured districts for the 2012 elections.

6. *See* Alaska Const. art. I, § 7 ("Inherent Rights .... all persons are equal and entitled to equal rights, opportunities, and protection under the law...."); Alaska Const. art. I, § 3 ("Civil Rights. No person is to be denied the enjoyment of any civil or political right because of race, color, creed, sex, or national origin."); *Hickel v. Se. Conference,* 846 P.2d 38, 52 n.22 (Alaska 1992) ("Our conclusion underscores the error in the Board's methodology in reconciling the requirements of the Voting Rights Act with the

requirements of the Alaska Constitution.... [T]he Board accorded minority voting strength priority above other factors, including the requirements of article VI, section 6 of the Alaska Constitution. This methodology resulted in proposed district 3, a district which does not comply with the requirements of the Alaska Constitution. However, proposed district 3 is not required by the Voting Rights Act, either.").

7. In *Hickel v. Southeast Conference,* we quoted from an opinion of the United States Supreme Court in explaining the purpose of the Voting Rights Act:

> The Federal Voting Rights Act, 42 U.S.C. § 1973 (1988), also plays a significant role in the reapportionment of state election districts. The purpose of this Act is to protect the voting power of racial minorities: "Under section 5 of the Act, a reapportionment plan is invalid if it 'would lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise.' "

846 P.2d at 49 (quoting *Beer v. United States,* 425 U.S. 130, 141, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976))..

8. Dissent at page 307 (Winfree, Justice).

minority districts solely to determine whether they functioned as effective districts. In other words, as Justice Winfree explains, "The conclusion that follows from [Dr. Handley's] testimony is that the DOJ would not reject as retrogressive a plan that failed to include an influence district in Southeast Alaska, because the former influence district in that region did not function as an effective district." [9]

Why does it matter that, as Justice Winfree and I believe, the court should stay the constitutional course and adhere to our May 10, 2012 order? It is a matter of allegiance and faithfulness to our state constitutional duty to all of the citizens of the State of Alaska to uphold our state constitution when it is not absolutely mandated by the United States Constitution or federal law that the Alaska Constitution must yield to federal law. In other words, we have a constitutional duty not to do "unnecessary violence to the Alaska Constitution." [10] There is no question that the United States Constitution is the supreme law of the land, and if a conflict arises between federal and state law, state law must yield. Because Alaska is subject to

the federal VRA, under which a redistricting plan is invalid if it is retrogressive with respect to effective Native districts, Alaska must comply with federal law even when compliance violates the Alaska Constitution.

We have repeatedly recognized this principle in our redistricting cases. For example, in *Hickel v. Southeast Conference*[11] the court was faced with these same tensions and conflicts between the requirements of the United States Constitution, the federal VRA, and the Alaska Constitution.[12] While we recognized the supremacy of the United States Constitution and the Voting Rights Act in *Hickel*, we also established a principle that if it was absolutely necessary to depart or deviate from the Alaska Constitution in order to comply with federal law, such departure or deviation should only be to the least extent necessary. In language and analysis directly applicable to the 2011 redistricting case, we explained:

> The [Redistricting] Board cited the Voting Rights Act as its justification in creating [House] District 3.[13] District 3 was meant to be a Native influence district.[14] The

**9.** *Id.*

**10.** *In re 2011 Redistricting Cases*, 274 P.3d 466, 467 (Alaska 2012).

**11.** 846 P.2d 38 (Alaska 1992).

**12.** We explained:

Legislative reapportionment is subject to a variety of legal requirements. The Federal Constitution, the Federal Voting Rights Act, and the Alaska Constitution all contain commands which guide the formation of a reapportionment plan. It is the interaction of these diverse and often diverging guidelines which makes reapportionment a difficult process. Because these guidelines sometimes lead in different directions, it is important to understand how they fit together.

*Id.* at 44. I will not here repeat what was explained in *Hickel*, but I wholeheartedly urge all readers to study the *Hickel* opinion, which cogently discusses in detail the sometimes competing and facially irreconcilable federal and state requirements pertaining to redistricting. When one understands the magnitude of the difficulties involved, one must appreciate and acknowledge the tremendous (and sometimes thankless) public service of the members and staff of the Redistricting Board, whose decennial work is and likely always will be subject to second-guessing, criticism, and inevitable court review.

**13.** In the June 13, 2011 Proclamation Plan, the Redistricting Board cited the VRA as its justification for creating a Native "influence" district in Southeast Alaska. *See In re 2011 Redistricting Cases*, No. 4FA-11-02209 CI, at 6–7, 9–10 (Alaska Super., Dec. 12, 2011). This "influence" district was carried over unchanged from the Board's original Proclamation Plan into its April 5, 2012 Amended Proclamation Plan, which the court unanimously rejected as being out of compliance with the constitutional *Hickel* process in its May 10, 2012 order. The court now adopts this unconstitutional amended plan as the interim redistricting plan in its May 22, 2012 order.

**14.** In 1992, DOJ was of the view that the VRA required preserving both Native effective districts and influence districts. As explained in Justice Winfree's dissent, the Board's VRA expert, Dr. Handley, testified that DOJ has since changed its standard for measuring retrogression and informally advised Dr. Handley that the benchmark for Alaska no longer includes an influence district. Dissent at page 307 (Winfree, Justice). This was the primary rationale for our May 10, 2012 decision requiring the Board to reformulate the Southeast Alaska districts without reference to the VRA: "because there is *no* VRA justification for deviating from Alaska constitutional requirements in Southeast Alaska." Alaska Supreme Court Order, at 2 (May 10, 2012) (emphasis added).

proposed configuration of District 3 raised the Native percentage of the district two percentage points compared to the old "Islands District." However, such an awkward reapportionment of the Southeast Native population was not necessary for compliance with the Voting Rights Act.[15]

This paragraph concluded with the all-important footnote 22, which has been the subject of much discussion in this 2012 redistricting case. In footnote 22, we held:

> Our conclusion underscores the error in the Board's methodology in reconciling the requirements of the Voting Rights Act with the requirements of the Alaska Constitution.... [T]he Board accorded minority voting strength priority above other factors, including the requirements of article VI, section 6 of the Alaska Constitution. This methodology resulted in proposed district 3, a district which does not comply with the requirements of the Alaska Constitution. However, proposed district 3 is not required by the Voting Rights Act, either.
>
> Article VI, cl. 2 of the United States Constitution provides that "This Constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land...." This mandates that provisions of state law, including state constitutional law, are void if they conflict with federal law. *To the extent that the requirements of article VI, section 6 of the Alaska Constitution are inconsistent with the Voting Rights Act, those requirements must give way. However, to the extent that those requirements [of the Alaska Constitution] are not inconsistent, they must be given effect. The Voting Rights Act need not be elevated in stature so that the requirements of the Alaska Constitution are unnecessarily compromised.*
>
> The Board must first design a reapportionment plan based on the requirements of the Alaska Constitution. That plan then must be tested against the Voting Rights Act. *A reapportionment plan may minimize article VI, section 6 requirements*

*when minimization is the only means available to satisfy Voting Rights Act requirements.*[16]

We have referred to the methodology described above as the "*Hickel* process." In our original order of March 14, 2012, when we first remanded the original redistricting plan to the Board, we explained:

> 6. It is undisputed that the Board began redistricting in March and April of 2012 by focusing on complying with the Voting Rights Act, thereby ignoring the process we mandated in *Hickel*. This focus resulted in the creation of five effective Native house districts, one "influence" house district, and three effective senate districts. The superior court found that two of these house districts violated the Alaska Constitution and were not necessary to achieve Voting Rights Act compliance.... And the superior court expressed unease with the "influence" district created in the southeast and invited us to consider its validity sua sponte.
>
> 7. Because it did not follow the *Hickel* process, the Board cannot meaningfully demonstrate that the Proclamation Plan's Alaska constitutional deficiencies were necessitated by Voting Rights Act compliance, nor can we reliably decide that question. The *Hickel* process provides the Board with defined procedural steps that, when followed, ensure redistricting satisfies federal law without doing unnecessary violence to the Alaska Constitution. The Board must first design a plan focusing on compliance with the [Alaska Constitution] article VI, section 6 requirements of contiguity, compactness, and relative socioeconomic integration.... Once such a plan is drawn, the Board must determine whether it complies with the Voting Rights Act and, to the extent that it is not compliant, make revisions that deviate from the Alaska Constitution when deviation is "the only means available to satisfy Voting Rights Act requirements."
>
> 8. The *Hickel* process assures compliance with the Alaska Constitution's requirements concerning redistricting to the

---

**15.** *Hickel,* 846 P.2d at 51.

**16.** *Id.* at 52 n. 22 (emphasis added).

greatest extent possible. The *Hickel* process also diminishes the potential for partisan gerrymandering and promotes trust in government. We have previously noted that the article VI, section 6 requirements were designed [by the drafters of the Alaska Constitution] to prevent gerrymandering by ensuring "that the election district boundaries fall along natural or logical lines rather than political or other lines." A redistricting plan that substantially deviates from these constitutional requirements undermines trust in the process. 9. Cases decided by the United States Supreme Court subsequent to *Hickel* have made adherence to the *Hickel* process even more critical. In a series of cases, the Supreme Court has established that under the Voting Rights Act, a jurisdiction cannot unnecessarily depart from traditional redistricting principles to draw districts using race as "the predominant overriding factor." Following the *Hickel* process will facilitate compliance with federal constitutional law by ensuring that traditional redistricting principles are not "subordinated to race." [17]

Thus, we remanded the Board's original redistricting plan with instructions to follow the *Hickel* process. The Board adopted an Amended Proclamation Plan on April 5, 2012, and submitted the amended plan to the superior court. But the superior court found that the April 5 plan did not comply with our remand order:

> Instead of redrawing a new plan that focused on the Alaska Constitution, there is no dispute that the Board used most of the districts from the [original] Proclamation Plan, with the exception of the districts in Fairbanks and districts that were created to satisfy the Voting Rights Act.... The court finds that the Board's method did not comply with either the spirit or the

letter of the Alaska Supreme Court's order and the *Hickel* process.[18]

The Board petitioned this court for review of the superior court's decision and, due to looming election deadlines, also requested that we approve an interim plan for the 2012 elections. We approved the Board's April 5 Amended Plan for use as an interim plan, but remanded to the Board

> for reformulation of the districts in Southeast Alaska.... On remand, the Board must "design a plan focusing on compliance with the article VI, section 6 requirements of contiguity, compactness, and relative socioeconomic integration; it may consider local government boundaries and should use drainage and other geographic features wherever possible." The reformulated plan should not be altered based on the Voting Rights Act (VRA) because *there is no VRA justification for deviating from Alaska constitutional requirements in Southeast Alaska.*[19]

The Board redrew the Southeast Alaska districts and on May 15, 2012, the Board submitted its reformulated plan directly to this court, as required by our order. This court received a number of objections to the reformulated districts. Some argued that the Board's amended plan violated the VRA by diminishing the Native influence district in the Southeast region. (In essence, these objections claimed that our May 10 order violated the VRA by directing the Board to reformulate the Southeast districts without reference to the VRA.) By this time, impending deadlines were looming for finalizing the redistricting plan to accommodate critical deadlines for candidate filings, campaigning, and publication of election-related materials.

Inexplicably, in response to these objections, this court reversed itself and retreated from its correct statement of constitutional

---

**17.** *In re 2011 Redistricting Cases*, 274 P.3d 466, 467–68 (Alaska 2012) (quoting *Bush v. Vera*, 517 U.S. 952, 959–60, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996); *Miller v. Johnson*, 515 U.S. 900, 920, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995); *Hickel*, 846 P.2d at 52 n. 22).

**18.** *In re 2011 Redistricting Cases*, No. 4FA–11–02209 CI, at 2 (Alaska Super., April 20, 2012).

**19.** Alaska Supreme Court Order, at 1–2 (May 10, 2012) (quoting *In re 2011 Redistricting Cases*, 274 P.3d at 467) (internal citation omitted) (emphasis added). Again, this order only approved the April 5 Amended Plan for use as an interim plan; the Board's petition requesting that we reverse the superior court's order and approve the Amended Plan as a final redistricting plan is still pending before this court.

principles set forth in our March 14 and May 10 orders. I wish to emphasize that the court's reversal was not based on a single new fact or piece of evidence—*nothing* changed between the court's May 10 order and its May 22 order except that the Board produced another amended plan, a plan that upon superficial examination appears to be in compliance with the court's May 10 order and the Alaska Constitution.

In my view there was nothing in the objections raised by interested parties that was truly new—certainly not their argument that DOJ would receive objections to any plan formulated for Southeast Alaska without reference to the VRA on the grounds that the plan violates the VRA. The court has been aware from the outset of Dr. Handley's testimony regarding DOJ's current position: that DOJ now measures retrogression based on Native effective districts, not Native influence districts.[20] Indeed, this was the principal rationale for our May 10 order. We said, "The reformulated plan should not be altered based on the Voting Rights Act ... because there is no justification for deviating from Alaska constitutional requirements in Southeast Alaska." [21]

The Board's most recent plan, redrawn in accordance with our express instruction, appears to comply with our order. What happened? What changed? In its most recent plan the Board appears to have followed the *Hickel* process just as we directed. I acknowledge there are alternative plans to the Board's May 15 plan that also appear to comply with the *Hickel* process and the Alaska constitutional requirements of contiguity, compactness, and relative socioeconomic integration. But at this late stage in the process, when it is important to have a maximally constitutional and VRA-compliant interim plan so that the 2012 elections can go forward—leaving for subsequent proceedings

the remaining work necessary to produce a final permanent plan—why did the court reverse course and order the adoption of a plan plainly unconstitutional under the Alaska Constitution? And plainly unconstitutional it is: the very fact that the Board (and other parties) finally generated redistricting plans for Southeast Alaska that are clearly more contiguous, more compact, and at least facially as socioeconomically integrated (if not more so) than the April 5 Amended Proclamation Plan demonstrates that the April 5 plan did not follow the *Hickel* process. We virtually said as much in our May 10 order.

What has happened is the court blinked in the face of threats of VRA objections to DOJ. By so doing, the court missed the target, which is to uphold the Alaska Constitution to the greatest extent possible. We know this. We said it before in *Hickel:*

> To the extent that the requirements of article VI, section 6 of the Alaska Constitution are inconsistent with the Voting Rights Act, those requirements must give way. However, to the extent that those requirements [of the Alaska Constitution] are not inconsistent, *they must be given effect.* The Voting Rights Act need not be elevated in stature so that the requirements of the Alaska Constitution are unnecessarily compromised.[22]

The court should have followed its own jurisprudence, but it did not.

The court's May 22 order fails to give effect to the Alaska Constitution because it orders the use of a redistricting plan that was drawn by the Board to maintain a Native influence district in Southeast Alaska ostensibly to comply with the Voting Rights Act, notwithstanding that the Board's own expert testified that DOJ likely would not reject a plan that did not contain a Native influence district in Southeast Alaska. The court's May 22 order rejects the use of a plan that

---

**20.** Dr. Handley testified that DOJ had changed its standard for determining the benchmark against which redistricting plans are evaluated for retrogression, and explained that DOJ now evaluated minority districts solely to determine whether they functioned as effective districts. She also testified that the influence district in Southeast Alaska was not an effective district, and DOJ had informally told her that, under this

new standard, the benchmark for Alaska was five effective Native house districts and three effective Native senate districts. *See* Dissent at page 307 (Winfree, Justice).

**21.** Alaska Supreme Court Order, at 2 (May 10, 2012).

**22.** *Hickel*, 846 P.2d at 52 n. 22 (emphasis added).

complied with the *Hickel* process in favor of a plan that the superior court found "did not comply with either the spirit or the letter of the Alaska Supreme Court's order [of March 14, 2012] and the *Hickel* process." [23] The May 22 order "unnecessarily compromises" our constitution because of the risk that DOJ might reject the May 15 plan [24] (which, incidentally, preserves all of the current Native effective districts).

Rather than implementing an unconstitutional interim plan because of what DOJ *might* do, the court should rely on the only relevant evidence in the record before us—Dr. Handley's testimony—and trust its own legal and constitutional judgment, just as it did in its May 10 order. The court should remain focused on the constitutional target and stay the course it laid out in its May 10 order. If DOJ disagrees, then so be it. Alaska would not be the first state that fails to receive preclearance from DOJ and, frankly, the Department's decision is not the final word. VRA cases are poised to work their way up the federal appellate ladder towards a final decision by the Supreme Court even as I write.[25]

We said in our first order of March 14: "Because it did not follow the *Hickel* process, the Board cannot meaningfully demonstrate that the Proclamation Plan's Alaska constitutional deficiencies were necessitated by Voting Rights Act compliance, nor can we reliably decide that question." [26] Because the Board's April 5, 2012 Amended Proclamation Plan also did not follow the *Hickel* process, at least with respect to the Southeast districts, how can the court now say that the April 5 plan's constitutional deficiencies were necessitated by the VRA? It cannot say that, of course, because nothing has changed—in other words, the court still cannot "reliably decide that question."

We said in *Hickel:* "A reapportionment plan may minimize article VI, section 6 requirements [of the Alaska Constitution] when minimization is the *only means available* to satisfy Voting Rights Act requirements." [27] How can the court adopt the April 5 plan when the court not only cannot say that the plan's deviations from the Alaska Constitution are "the only means available to satisfy the Voting Rights Act," but to the contrary the court previously, and unanimously, concluded that "there is no VRA justification for deviating from Alaska constitutional requirements in Southeast Alaska"? [28] The question answers itself: the April 5 plan was and remains unconstitutional, and the court has offered no reasoned basis explaining why it is necessary to adopt it.

I conclude by restating what we unanimously held in our decision following the first petition in this 2011 redistricting case, in the hopes that the court again will give due deference and power to our state constitution:

8. The *Hickel* process assures compliance with the Alaska Constitution's requirements concerning redistricting to the greatest extent possible. The *Hickel* process also diminishes the potential for partisan gerrymandering and promotes trust in government. We have previously noted that the article VI, section 6 requirements were designed [by the drafters of the Alaska Consti-

**23.** *In re 2011 Redistricting Cases,* No. 4FA–11–02209 CI, at 2 (Alaska Super., April 20, 2012).

**24.** "While the [Board's most recent May 15, 2012] reconfigured districts may comply with the redistricting criteria of article VI, section 6 of the Alaska Constitution, there is a risk that the United States Department of Justice would decline to pre-clear them under the Voting Rights Act.... In order to avoid this possibility, the court will not require the use of the May 15, 2012 reconfigured districts for the 2012 elections." Alaska Supreme Court Order, at 1–2 (May 22, 2012) (for the full quotation, see *supra* note 5).

**25.** As recently as May 18, 2012, the United States Court of Appeals for the District of Columbia Circuit upheld the constitutionality of Section 5

of the VRA in a 2–1 opinion. *Shelby County, Ala. v. Holder,* 679 F.3d 848 (D.C.Cir.2012). This case likely will present the United States Supreme Court with an opportunity to decide whether Section 5 of the VRA is constitutional under the United States Constitution.

**26.** *In re 2011 Redistricting Cases,* 274 P.3d 466, 467 (Alaska 2012).

**27.** *Hickel,* 846 P.2d at 52 n. 22 (emphasis added).

**28.** Alaska Supreme Court Order, at 2 (May 10, 2012).

tution] to prevent gerrymandering by ensuring "that the election district boundaries fall along natural or logical lines rather than political or other lines." A redistricting plan that substantially deviates from these constitutional requirements undermines trust in the process.

9. Cases decided by the United States Supreme Court subsequent to *Hickel* have made adherence to the *Hickel* process even more critical. In a series of cases, the Supreme Court has established that under the Voting Rights Act, a jurisdiction cannot unnecessarily depart from traditional redistricting principles to draw districts using race as "the predominant overriding factor." Following the *Hickel* process will facilitate compliance with federal constitutional law by ensuring that traditional redistricting principles are not "subordinated to race." [29]

### Appendix 1

**In the Supreme Court of
the State of Alaska**

**IN RE 2011 REDISTRICTING CASES.**

Supreme Court No. S–14721

**Order**

Date of Order: **5/22/12**

Trial Court Case # 4FA–11–02209CI

Consolidated Cases # 4FA–11–02213CI/1JU–11–00782CI

Before: Carpeneti, Chief Justice, and Fabe, Winfree, and Stowers, Justices, and Matthews, Senior Justice.*

WINFREE and STOWERS, Justices, dissenting.

IT IS ORDERED:

1. The Amended Proclamation Plan adopted by the Redistricting Board on April 5, 2012, including the Southeast Alaska districts as configured in the plan of that date, shall serve as the redistricting plan for the 2012 elections.

2. The court has accepted the Southeast districts as configured in the plan of April 5, 2012 rather than the reconfiguration submitted by the Redistricting Board to the court on May 15, 2012 because of the numerous objections to the reconfigured districts that this court has received. While the reconfigured districts may comply with the redistricting criteria of article VI, section 6 of the Alaska Constitution, there is a risk that the United States Department of Justice would decline to pre-clear them under the Voting Rights Act. Notice of the failure of the Department of Justice to pre-clear the new districts would come so late in the 2012 election cycle that a great disruption to the election process would result. In order to avoid this possibility, the court will not require the use of the May 15, 2012 reconfigured districts for the 2012 elections.

3. The Board's petition for review from the superior court's order of April 20, 2012, has been submitted to this court and remains under advisement. One of the issues raised by the petition for review is whether the Redistricting Board failed to comply with the *Hickel* process as mandated by this court's order of March 14, 2012, with respect to the Southeast Alaska districts. Our order of May 10, 2012, is premised on the conclusion that the Board did not so comply. When we issue an order and opinion on the Board's petition for review, the order will contain a discussion of and directions concerning the reconfiguration of the Southeast Districts, and will seek to ensure that districts that comply with the Alaska Constitution can receive timely review by the Department of Justice for use in subsequent elections.[1]

4. We invite the parties, the amici, the State, and other interested persons to peti-

---

**29.** *In re 2011 Redistricting Cases,* 274 P.3d 466, 468 (Alaska 2012) (quoting *Bush v. Vera,* 517 U.S. 952, 959–60, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996); *Miller v. Johnson,* 515 U.S. 900, 920, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995); *Hickel,* 846 P.2d at 45).

\* Sitting by assignment under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

**1.** We note that our May 10 order required that the Board's members and staff work through the weekend of May 12th and 13th in order to arrive at a new plan for Southeast Alaska. This was a considerable imposition on their personal lives and we thank and commend them for their dedicated service.

tion this court for a change in any election-related deadlines that cannot be reasonably complied with as a result of the delay in establishing districts for 2012.

Entered by direction of the court.

Clerk of the Appellate Courts

/S/

Marilyn May

WINFREE and STOWERS, Justices, dissent from this order. They would require that the 2012 elections be conducted under the reconfigured districts that were submitted by the Board on May 15, 2012.

Appendix 2

### In the Supreme Court of the State of Alaska

**IN RE 2011 REDISTRICTING CASES.**

Supreme Court No. S–14721

**Order Regarding Interim Plan for 2012 Elections**

Date of Order: May 10, 2012

Trial Court Case # 4FA–11–02209CI

Consolidated Cases # 4FA–11–2213CI/1JU–11–0782CI

Before: Carpeneti, Chief Justice, and Fabe, Winfree, and Stowers, Justices, and Matthews, Senior Justice.*

IT IS ORDERED:

1. The Redistricting Board's May 3, 2012 petition for an order approving its proposed interim plan is DENIED.

2. Pursuant to our order to show cause of May 4, 2012 we ORDER that the Board's Amended Proclamation Plan be adopted as an interim plan to govern the 2012 elections, except that:

3. We first REMAND to the Board for reformulation of the districts in Southeast Alaska. These districts are presently House Districts 31–34 and Senate Districts P and Q in the Amended Proclamation Plan. On remand, the Board must "design a plan focusing on compliance with the article VI, section 6 re-

quirements of contiguity, compactness, and relative socioeconomic integration; it may consider local government boundaries and should use drainage and other geographic features wherever possible." [1] The reformulated plan should not be altered based on the Voting Rights Act (VRA) because there is no VRA justification for deviating from Alaska constitutional requirements in Southeast Alaska.

4. The Board shall submit the reformulated plan for the Southeast districts directly to this court for expedited consideration no later than 12:00 noon **May 15, 2012**. Any objections to the new districts shall be made directly to this court no later than **May 18, 2012**.

5. The Redistricting Board's Petition for Review from the superior court's order of April 20, 2012 has been submitted to this court and remains under advisement.

Entered by direction of the court.

Clerk of the Appellate Courts

/S/

Marilyn May

---

* Sitting by assignment under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

1. *In re 2011 Redistricting Cases,* 274 P.3d 466, 467 (Alaska 2012).